[Civ. No. 5128.  Second Appellate District, Division Two.—March 15, 1929.]

J. A. McNEAL, Respondent, v. EDWARD H. MERCER, Appellant.

Scott McReynolds for Appellant.

Clarke & Bowker for Respondent.

STEPHENS, J., *pro tem.*—This is an action for legal services rendered by John G. Mott and Albert M. Cross, plaintiff's assignors, to the defendant, Edward H. Mercer. The action was tried before a jury and a judgment rendered against the defendant for the sum of five hundred dollars and costs. The defendant appeals.

The defendant is a druggist in Oxnard, California, and in the spring of 1922 became involved with the federal authorities on account of some alleged irregularities in the sale of whisky and was required to appear before the federal prohibition agent in Los Angeles to show cause why his permit to sell liquor on prescription should not be revoked. He employed Drapeau, Orr & Gardner, Esquires, a firm of attorneys in Ventura, California, to help him. The defendant had been buying goods from Brunswig Drug Company, wholesalers, in Los Angeles, and upon one occasion the defendant and his attorney visited the Brunswig Drug Company, and Water M. Brunswig, of the wholesale firm, made an appointment for the defendant to meet Mr. Mott, attorney for the drug company, whom he thought could be of great assistance in the case. Mr. Mott was consulted and thereafter co-operated with defendant's Ventura attorneys in the case. Nothing was said regarding a retainer or compensation at the time and no bill was presented to the defendant by Mott & Cross until December, 1923. The entire matter had been closed in August, 1922, approximately one and one-half years before a bill was rendered. A few weeks before the suit was brought the defendant ceased to buy goods from the Brunswig Drug Company and they brought an action against him for breach of contract in so doing.

There were two issues actually contested on the trial, viz., the value of the services actually rendered by Mott & Cross, and the question as to whether or not the services were rendered at the instance and request of the defendant, or whether the Brunswig Drug Company had volunteered to lend to the defendant the services of their attorneys, Mott & Cross, to assist defendant, their customer, in this difficulty.

In the above we have adopted appellant's statement of fact as our own, without change. The only point upon

which a reversal is asked is that a certain letter was admitted over the objection that it was not the best evidence. Without doubt its admission without any foundation was erroneous. The question for us to decide is whether or not the verdict must be reversed because of the error. We think not. The exhibit objected to reads as follows:

"Oxnard Drug Co., Oxnard, California,
"June 29, 1922.

"Mr. W. M. Brunswig, c/o Brunswig Drug Co., Los Angeles.

"Dear Sir: Am enclosing a copy of a summons from Mr. Rutter prohibition director and same is self explanatory, with the exception that he charges that we have sold liquor without a prescription, which is not a fact as was proven after the reading of the information filed by O'Leary and which we had a hearing on last Friday in the office of the United States attorney. Wish you would get in touch with Mr. Mott at your convenience and see if we can't keep this thing from coming up at all. I know that he is doing all he can, but would like to have you see him in regard to this matter.

"He will explain to you the details of the case as they now stand and I am at a loss to see how they can make a case out of the information that they have.

"Hope you will give this your kind attention and thanking you, I am,

"Yours very truly,
"(Signed) E. H. MERCER."

Mr. Mott testified that he first met Mr. Mercer the latter part of April on first part of May, 1922, after having received a telephone message from Mr. Walter Brunswig, an officer of the Brunswig Drug Company, asking for an appointment, that they (the drug company) had a customer which he desired to introduce and "he wanted me to take up some matters for him." After that Mr. Brunswig came to the office with Mr. Mercer and his local attorneys. The legal troubles of Mr. Mercer were gone over and Mr. Mott afterward performed the services sued for. Mr. Brunswig testified in part as follows:

"Q. Did you go to Mr. Mott's office that day with Mr. Mercer or meet him there? A. I did, yes.

"Q. Did you, at Mr. Mott's office, on that day, or at any other time, direct or advise Mr. Mott to go ahead and assist Mr. Mercer at the expense of the Brunswig Drug Company or at your expense? A. I did not. I introduced Mr. Mercer to Mr. Mott with the request that he do for him what he could. . . .

"Q. Did you state to him that he had made a mistake in hiring Drapeau and Gardner? A. I made the statement that it would be a good thing, in addition to Mr. Drapeau and Mr. Gardner, to hire some local attorney who was familiar with the ways of the prohibition unit in Los Angeles—some reputable attorney in Los Angeles in addition to his two local attorneys.

"Q. I will ask you, Mr. Brunswig, if you phoned to Mr. Mott for an appointment for these gentlemen? A. I did.

"Q. For Mr. Mercer? A. At his request."

Before the meeting at Mr. Mott's office, according to Mr. Mercer's testimony, Mr. Brunswig called Mr. Mercer over the telephone at Oxnard, stating that he understood Mercer was in some trouble with the federal government and to come down the next morning, that he wanted to see him. The next morning Mr. Mercer with his local attorneys went to Los Angeles and saw Mr. Brunswig and a Mr. King, also an officer of the drug company. A conversation, of which the following is a part, took place between Mr. Mercer and Mr. King:

"Q. Then what occurred? A. (Of defendant.) He proceeded to inquire why I didn't take this matter up with him, and wanted me to lay my cards on the table; so I told him I didn't see where it was necessary for me to do that, that I had employed Mr. Drapeau and Mr. Gardner as my attorneys and he made the statement that he could— or that I shouldn't have done that, that they had competent attorneys here to see to the courts and they could let me use their attorneys; and then he went on with regular questions in regard to what happened and what took place, and in about half an hour Mr. Brunswig—Drapeau and Gardner came over there and Walter Brunswig suggested that he call up Mr. Mott, his attorney, whom I did not know at that time, and said he had made an appointment with him for five o'clock that afternoon, that he was not in that morn-

ing; so at five o'clock on that same day we met in Mott's office—Drapeau, Gardner, Walter Brunswig and Mr. Mott.''

Mr. Mercer testified to the meeting at Mott's office about the same as above quoted and stated that he did not request Mr. Mott to represent him. Mr. Brunswig went to Ventura and testified as a witness for the plaintiff.

The case is absolutely devoid of any testimony to the effect that the conversation by and between Mr. Mercer and the officers of the drug company was ever communicated to Mr. Mott. Certainly Mr. Mott could not be bound by any arrangement of the drug company to have Mr. Mercer represented by Mott at their expense. There is no testimony tending to prove that Mr. Mott knew anything about the letter introduced and it is difficult to see how it could affect Mr. Mott's recovery for services performed even if it be admitted as genuine. It will be noticed that the letter was written about a month after the services began. Defendant defends principally upon the ground that he did not employ Mr. Mott but that the drug company did. If the letter had any effect upon the jury it seems to us it must have been along the line contended for by the defendant, for here (accepting the letter as genuine) we find the defendant, long after the employment began, not writing directly to his attorney when a new phase of the trouble arose but writing to the drug company to see Mr. Mott about this, too. We cannot agree with defendant when he argues in his brief that this letter tends to prove the direct employment of Mott by Mercer. We think if it is evidence affecting the employment at all it tends to sustain defendant's theory that the drug company employed Mott. ■ It is elementary that a party benefited by error cannot complain of it.

The firm which assigned to the plaintiff performed the services. There is no question raised here as to the reasonableness of the amount charged and found by the jury to be due. The statute had not run against the charge. There is no evidence in the case to the effect that it is a custom of wholesalers to furnish free counsel to their customers and it does not seem that the testimony would warrant the conclusion that anyone on behalf of the drug company ever intimated to Mr. Mott that the company would pay for the services performed for and on behalf of Mercer. If the drug company had been made a party, all

of these conversations outside the hearing of Mr. Mott and uncommunicated to him and the letter complained of would have been very material evidence to the effect that the drug company had become obligated to Mr. Mercer either to pay Mr. Mott or to make good to Mr. Mercer any fee he was obligated to pay Mott. But no such question is presented in this case.

When mentioning Mr. Mott by name herein we include his firm and assignee where such inclusion would be appropriate.

The judgment is affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.